1
2
3
4
5
6
7
8                           **UNITED STATES DISTRICT COURT**

9                           **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CHINMAX MEDICAL SYSTEMS                   CASE NO. 10cv2467 WQH (NLS)
     INC., a Chinese Corporation,
12                                             **ORDER**
                                   Plaintiff,
13              vs.

14   ALERE SAN DIEGO, INC. (formerly
     known as BIOSITE INCORPORATED),
15   a Delaware Corproation,

16                                 Defendant.

17

18

19   HAYES, Judge:

20          The matters before the Court are the Petition (ECF No. 1) and the Motion to Vacate

21   Arbitration Award filed by Petitioner Chinmax Medical Systems Inc.  (ECF No. 10).

22                                   **BACKGROUND**

23          On December 1, 2010, Chinmax Medical Systems Inc., a Chinese Corporation,

24   ("Chinmax") initiated this action by filing a Verified Petition to Vacate Arbitration Award.

25   (ECF No. 1).  On that same day, Chinmax filed an Ex Parte Motion for Stay of an Interim Final

26   Award issued in Arbitration which was denied by this Court.  (ECF Nos. 3, 12).  On December

27   6, 2010, Chinmax filed a Motion to Vacate Arbitration Award.  (ECF No. 10).  On December

28   27, 2010, Alere San Diego, Inc, a Delaware Corporation, ("Alere") filed an Opposition.  (ECF

No. 14).  On January 3, 2011, Chinmax filed a Reply.  (ECF No. 16).

## ALLEGATIONS OF PETITION

The principal place of business for Chinmax is Shanghai, China.  Chinmax has been the exclusive distributor of certain medical devices manufactured by Alere and its predecessors since 2001. Chinmax and Alere operated under a distribution agreement for five years.

On April 1, 2007, Chinmax and Alere entered into a second distribution agreement which is the subject of the current Petition.  The second distribution agreement set an initial one-year term which ran until March 31, 2008.  The agreement allowed for an optional two-year renewal which would run until March 31, 2010, and an automatic renewal which would run until March 31, 2012, unless a party gave ninety-days notice of non-renewal prior to expiration of the previous term.  Alere renewed the distribution agreement through March 31, 2010.

The second distribution agreement provided Chinmax the right to register new products in China, but in 2008, Alere "dictated" that it would register new products.  (ECF No. 1 at 8).  "Chinmax demanded value in return for giving up its contractual right over registration renewals[,]" and "required" that Chinmax continue to be named as the service agent.  *Id.*

Chinmax and Alere established sales targets each year.  Alere increased the sales targets in 2008 and 2009.  Alere's representatives stated that Alere would renew the distribution agreement for the final two-year term if Chinmax met at least ninety-percent of the 2009 sales target.  Chinmax exceeded the 2009 sales target despite Alere making over $9 million in "illegal sales" during the same time period.  *Id*. at 9.

On January 5, 2010, Alere informed Chinmax that Alere would not renew the second distribution agreement.  Alere claimed that Chinmax was in material breach of the second distribution agreement for failing to make payments on delivered products totaling $2,685,658.50.  Chinmax retained the $2,685,658.50 as a set-off for its damages suffered as a result of Alere's "illegal sales" during 2009 which Chinmax estimates as totaling more

than $3,240,000.00.  *Id*. at 10.

On September 10, 2010, Chinmax provided Alere notice that it intended to arbitrate the dispute pursuant to the arbitration agreement stated in the second distribution agreement.  The parties arbitration agreement states as follows:

> Any dispute, controversy or claim initiated by either party arising out of or relating to [the Distribution Agreement], its negotiations, execution, or interpretation, or in the performance by either party of obligations under [the Distribution Agreement] ... shall be finally resolved by binding arbitration in the event that the parties are unable to resolve it.... Any such arbitration shall be conducted in the English language under the International Dispute Resolution Procedures and Arbitration Rules of the American Arbitration Association (the "Rules") by a panel of three (3) arbitrators appointed in accordance with such Rules .... Notwithstanding the foregoing, either party shall have the right, without waiving any right or remedy available to such party under this Agreement or otherwise, to seek and obtain from any court of competent jurisdiction any interim or provisional relief that is necessary or desirable to protect the rights or property of such party, pending the selection of the arbitrators hereunder or pending the arbitrator's determination of any dispute, controversy or claim hereunder.

(ECF No. 10-3 at 12).

On October 13, 2010, Chinmax filed a demand for arbitration with the International Centre for Dispute Resolution division of the American Arbitration Association ("AAA"). On October 15, 2010, Alere filed a request for an emergency interim award pursuant to Article 37 of the American Arbitration Association International Dispute Resolution Procedures.  On October 20, 2010, Chinmax filed a Motion to Strike, or Alternatively, to Consolidate the Merits Hearing with the Interim Proceedings.  On November 23, 2010, an emergency arbitrator issued an "Order re [Alere's] Request for Emergency Interim Award Pending Arbitration."  (ECF No. 1 at 12 ¶ 40, 23-28).

The interim order states:

> The parties confirmed their mutual interest in assuring that product registrations ... for products covered by the Distribution Agreement be renewed on time and as necessary, and not be allowed to expire....However, the parties have been unable to agree on a process for assuring that these product registration renewals are accomplished as required.  In light of these facts ... to ensure timely product registration renewals, without prejudicing the rights of either party: (I) Chinmax shall promptly deliver into an escrow to be established by Alere ... the following documents: the original license of the [Triage BNP]; the original license of the [Triage Cardiac Panel]; [and YZB/USA].  Chinmax shall also promptly make and

1    transmit to Alere copies of all applications for product registrations, or
2    renewal of product registrations, in its files concerning any products which
     are subject to the Distribution Agreement."

3    *Id*. at 24-25.

4         The interim order states:

5    All renewal applications may identify [Alere] as the after-sales service
     agent....[S]olely for the purpose of assuring that the product
6    registration/renewals are accomplished without unnecessary disruption or
     delay ... (I) Chinmax shall not initiate any communications concerning the
7    registration, or renewal of registrations, of any product subject to the
     Distribution agreement with the SFDA [China's product registration and
8    renewal agency] or other Chinese governmental agencies or officials; and
     (ii) to the extent that the SFDA or other Chinese agency or officials might
9    inquire of Chinmax concerning registrations or renewals ... Chinmax may
     respond to those inquires after informing Alere of the inquiry, and after
10   conferring with Alere on the appropriate response.

11   *Id*. at 26-27.  The interim order states: "Chinmax shall not initiate communications with any

12   customs officials concerning products subject to the 2007 Distribution Agreement, but may

13   respond to any inquiries ... in the same manner as with inquiries which Chinmax might

14   receive from the SFDA...."  *Id*. at 27.

15        The interim order states:

16   [G]iven the admission by Chinmax that $2.8 million is indeed due and
     owing under the distribution agreement (subject only to alleged offsets), in
17   order to facilitate any consideration by the full panel of conservancy or
     other orders regarding payment of this amount, Chinmax shall provide to
18   Alere the following information within ten (10) days of the date of this
     order:  a listing of all current bank accounts of Chinmax, including bank
19   name and contact information, numbers of bank accounts in which any
     monies currently exist, and a statement of the balances in said accounts as
20   of December 1, 2010.

21   *Id*. at 27-28.  The interim order states: "This Order shall remain in effect pending review of

22   the full arbitration tribunal, once appointed, and thereafter as the tribunal may order."  *Id*. at

23   28.

24        In the Petition, Chinmax alleges that the emergency arbitrator did not have

25   jurisdiction to issue the interim order on the grounds that the parties' agreement only

26   allowed arbitration by a three arbitrator panel for final resolution and the parties' agreement

27   provided that they would seek interim or provisional orders through a court of competent

28   jurisdiction.  Chinmax alleges that the emergency arbitrator lacked authority to issue the

interim order under Article 37 of the International Dispute Resolution Procedures on the grounds that the arbitrator failed to find that there was an emergency, that the obligations of the interim order alter the status quo between the parties, and that the interim order manifestly disregards the law.

### EMERGENCY ARBITRATION RULE

The AAA International Dispute Resolution Procedures Article 37 regarding emergency measures of protection states:

> Unless the parties agree otherwise, the provisions of this Article 37 shall apply to arbitrations conducted under arbitration clauses or agreements .... A party in need of emergency relief prior to constitution of the tribunal shall notify the administrator[,] ... the administrator shall appoint a single emergency arbitrator from a special panel of emergency arbitrators designated to rule on emergency applications .... The emergency arbitrator shall have the power to order or award any interim or conservatory measure the emergency arbitrator deems necessary, including injunctive relief measures for the protection or conservation of property.  Any such measure may take the form of an interim award or of an order.... Once the tribunal has been constituted, the tribunal may reconsider, modify or vacate the interim award or order of emergency relief issued by the emergency arbitrator.

(ECF No. 14-3 at 17).

### CONTENTIONS OF THE PARTIES

Chinmax requests that the Court vacate the "Order re [Alere's] Request for Emergency Interim Award Pending Arbitration."  Chinmax contends that this Court has jurisdiction to review the interim order on the grounds that it is a "temporary equitable award[] involving the preservation of assets relating to the subject matter of the arbitration ...."  (ECF No. 16 at 6 (citing *Pac. Reins. Mgmt. Corp. v. Ohio Rein. Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991)).  Chinmax contends that the interim order is a final award, and that finality is demonstrated by the terms of the interim order which sets a ten-day deadline for compliance.  Chinmax also contends that the interim order should be vacated on the grounds that the arbitrator exceeded his powers and the arbitrator manifestly disregarded the law.

Alere contends that the Court does not have jurisdiction to review the interim order because it is not a final award.  Alere contends that the full panel of arbitrators are

authorized to reconsider, modify, or vacate the interim order.  Alere contends that the Court should review a non-final award "if at all, only in the most extreme case[]."  (ECF No. 14 at 9 (citing *Pac. Reins. Mgmt. Corp.*, 935 F.2d at 1022)).  Alere contends that this case does not present "extreme" circumstances justifying review because it the interim order is reviewable by the fully constituted panel of arbitrators.  Alere also contends that the arbitrator's interpretation of his powers is non-reviewable, the arbitrator did not exceed his powers, and the arbitrator did not manifestly disregard the law.

## DISCUSSION

"The use of arbitration as a means of settling disputes has been accorded specific Congressional endorsement in the [Federal Arbitration Act] and should be encouraged by the federal courts." *Aerojet-General Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973).  "The basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings." *Id.*

Historically, for an arbitration award to be subject to judicial review, it must be final and binding as to all of the issues presented to the arbitrator. *See Millmen Local 550, United Broth. of Carpenters and Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, (9th Cir. 1987); *New United Motor Mfg., Inc. v. United Auto Workers Local,* 617 F.Supp.2d 948, 954 (N.D. Cal. 2008) (citing *ConnTech Development Co. v. University of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 686 (2nd Cir. 1996)).  "[B]ecause of the Congressional policy favoring arbitration when agreed to by the parties, judicial review of *non-final* arbitration awards 'should be indulged, if at all, only in the most extreme cases.'" *Pac. Reins. Mgmt. Corp.*, 935 F.2d at 1022 (citations omitted) (emphasis in original).

In *Pacific Reinsurance Management Corp.*, the Ninth Circuit considered as a matter of first impression "[w]hether temporary equitable relief that is necessary to prevent a potential final award from being meaningless can be confirmed and enforced in the district courts." *Pac. Reins. Mgmt. Corp.*, 935 F.2d at 1022.  Prior to deciding the merits of the arbitration, the arbitration panel issued an 'interim final order' which created an escrow account and ordered the deposit of disputed funds in that escrow account. *Id.*  The Ninth

Circuit stated that judicial confirmation of the "interim final award" was "not inconsistent ... with the policy favoring arbitration ... [g]iven the potential importance of temporary equitable awards in making the arbitration proceedings meaningful...." *Id.* at 1023.  The Ninth Circuit stated that "court enforcement of [final temporary equitable awards], when appropriate, is not an undue intrusion upon the arbitral process, but is essential to preserve the integrity of that process." *Id.* (quotation omitted).  The court held that: "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful ... are final orders that can be reviewed for confirmation and enforcement by district courts under the [Federal Arbitration Act] ." *Id.*

"[C]ourts go beyond a document's heading and delve into its substance and impact to determine whether the decision is final." *Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000); *see also Pac. Reins. Mgmt. Corp.*, 935 F.2d at 1030 ("finality should be judged by substance and effect, not by superficial technicalities."). "Where an arbitrator retains jurisdiction in order to decide a substantive issue the parties have not yet resolved, this retention of jurisdiction indicates that the arbitrator did not intend the award to be final." *Orion Pictures Corp. v. Writers Guild of Am., W., Inc*., 946 F.2d 722, 724 (9th Cir. 1991) (quotation omitted); *Hyosung (America) Inc. v. Tranax Tech. Inc.*, Case. No. C 10-0793 VRW, 2010 WL 1853764, at *4 (N.D. Cal. May 6, 2010) (explaining that when determining whether an arbitration award is final, courts consider whether the arbitrator intended the award to be final); *see also New United Motor Mfg., Inc.*, 617 F. Supp. 2d at 958 (finding that an arbitration award regarding liability only was final, in part, on the grounds that "[t]here [was] no evidence that either party believed that either the parties or the Arbitrator would be able to reopen or revisit the liability phase once [the arbitrator] issued his award.").

In this case, prior to the constitution of the full arbitration panel, a single emergency arbitrator issued a temporary equitable order pursuant to Article 37 of the AAA International Dispute Resolution Procedures.  Although the interim order required Chinmax to take certain conservatory actions within ten days, the interim order also that the

temporary equitable order was issued "in order to facilitate any *consideration by the full panel* of conservancy ...." and the interim order would "remain in effect pending review of the full arbitration tribunal, once appointed, and thereafter *as the tribunal may order*." *Id.* at 27-28 (emphasis added). In addition, Article 37 of the AAA International Dispute Resolution Procedures provides: "Once the tribunal has been constituted, the tribunal *may reconsider, modify or vacate the interim award or order* of emergency relief issued by the emergency arbitrator." (ECF No. 14-3 at 17) (emphasis added). When considering the "substance and impact" of the interim order, this Court concludes that the interim order was not a final order and is not subject to review by this Court. *Publicis Commc'n*, 206 F.3d at 729. The rules provide that the full arbitration panel has the authority to "reconsider, modify or vacate" the interim order; thus, the rules expressly retained jurisdiction over the issue for further consideration by the full panel. *See Orion Pictures Corp.*, 946 F.2d at 724. The arbitrator stated that the interim order was issued to facilitate a conservancy order by the full arbitration panel; thus, the arbitrator did not intend the interim order to be final. *See Hyosung (America) Inc.*, 2010 WL 1853764, at *4; *New United Motor Mfg., Inc.*, 617 F. Supp. 2d at 958. The Court concludes that the evidence does not present an "extreme" case permitting judicial review of a non-final order because the interim order is expressly subject to reconsideration, modification, or vacatur by the full tribunal. The Motion to Vacate Arbitration Award filed by Petitioner Chinmax (ECF No. 10) and the Petition seeking the same relief (ECF No. 1) are DENIED.

## CONCLUSION

IT IS HEREBY ORDERED that the Petition (ECF No. 1) and the Motion to Vacate Arbitration Award filed by Petitioner Chinmax Medical Systems Inc. (ECF No. 10) are DENIED. The Clerk shall close the case.

DATED: May 27, 2011

**WILLIAM Q. HAYES**
United States District Judge